# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) DALE L. ASTLE, | ) |
| Plaintiff, | ) Case No.: 14-cv-043 TCK-FHM |
| v. | ) |
| | ) **Jury Trial Demanded** |
| (1) GUARANTY ABSTRACT COMPANY, | ) |
| | ) Attorney Lien Claimed |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Plaintiff, DALE L. ASTLE ("Plaintiff"), by and through the undersigned counsel, and for his cause of action against Defendant, GUARANTY ABSTRACT COMPANY ("Defendant"), states as follows:

## Parties

1. The Plaintiff, Dale L. Astle, is an adult male citizen of The United States and resident of Tulsa, in Tulsa County, which is within the United States District Court for the Northern District of Oklahoma, and at all relevant times herein was an employee of Defendant.

2. The Defendant, Guaranty Abstract Company, is a domestic for profit business corporation doing business in Tulsa, in Tulsa County, which is within the United States District Court for the Northern District of Oklahoma, and at all relevant times herein employed Plaintiff.

1

## Jurisdiction & Venue

3. Plaintiff's cause of action is for age discrimination in violation of The Age Discrimination in Employment Act of 1967 ("ADEA"), as amended and set forth in 29 U.S.C. §§ 621, *et seq*.

4. All of the actions complained of occurred in Tulsa, Tulsa County, which is located in the Northern District of Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

## Administrative Prerequisites

5. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No. 564-2013-00436) alleging age discrimination in violation of the Age Discrimination in Employment Act.

6. Plaintiff's Notice of Rights was issued on November 7, 2013 and received by Plaintiff on the same date. Plaintiff brings this action within ninety (90) days of receipt.

## Statement of Facts

7. Plaintiff began his employment with Defendant on November 1, 1979, as Vice President and Associate General Counsel.

8. Plaintiff was named as General Counsel in 1987. Over the next several years, Plaintiff continued in that position with incremental raises, until he was terminated by Defendant on or about August 10, 2012.

9.  The discriminatory action exhibited by Plaintiff's termination was the result of a culture and pattern of ageism at Defendant. Defendant's Chairman and CEO, Jack Kirkpatrick ("Kirkpatrick"), made certain remarks throughout Plaintiff's employment that evidence this culture of ageism. Remarks attributed to Kirkpatrick include: "all persons in key positions should not be over the age of forty-five" and "the face of Guaranty Abstract Company is young people."

10. Another indication of this culture of ageism is the fact that Defendant refused to pay Plaintiff any severance pay and refused to pay his earned and unused vacation time for 2012 unless Plaintiff agreed to sign a separation agreement which stated he was "retiring" from Defendant. The use of the word "retiring" when referring specifically to Plaintiff demonstrates an attitude that older workers are to be treated differently, in a negative way. A separation agreement for a younger worker would not have mentioned the word "retiring."

11. In the years leading up to his termination, Plaintiff observed actions by Defendant where certain key older employees were targeted and forced to retire. One tactic used with other older employees involved constructive demotion once that employee reached or was approaching the age of sixty-five. This tactic was not used on older employees who did not express an intent to continue working for Defendant or who expressly stated they intended to retire at or around the age of sixty-five.

12. Another observed behavior of Defendant were tactics of preemptive deception and willful blindness to facilitate completion of an act or practice which may have otherwise been prohibited. For example, Defendant created a scenario to make it appear as if Plaintiff was not doing his job by accusing him of not providing good customer service as a precursor for his termination. However, Plaintiff was routinely praised by customers for his exceptional service.

13. In the summer of 2007, Kirkpatrick came into Plaintiff's office to comment on it being Plaintiff's sixtieth birthday. After this office visit, Kirkpatrick never again set foot in Plaintiff's office and began to visibly ignore Plaintiff from that point forward. Also, prior to Plaintiff turning sixty, Kirkpatrick would regularly consult with Plaintiff on legal issues, but that stopped on or about the time Plaintiff turned sixty and he was thereafter left out of the loop. Furthermore, before Plaintiff turned sixty Kirkpatrick would regularly give Plaintiff many compliments on his work, usually through email. On or about the time Plaintiff turned sixty, work done by Plaintiff that normally would trigger a complimentary email from Kirkpatrick resulted in silence. Throughout all this time Plaintiff's job performance had not changed.

14. Around this time, Defendant began hiring younger staff attorneys who did not have the skill-sets needed to do the job.

15. At this point, Plaintiff perceived his job was threatened and began working even harder than normal, turning out a tremendous volume of work without error.

16. Of the younger attorney's that Defendant had hired, Steve Rankin ("Rankin") was the only one who had the skill-set needed to do Plaintiff's job. Defendant had terminated Rankin's employment when business dropped off due to the economy, but when work began to pick up Defendant would use him as needed on a contract basis. The same week that Plaintiff was terminated, Rankin was surreptitiously formally rehired by Defendant. Rankin, roughly fifty-five years old in August 2012, assumed Plaintiff's job responsibilities and duties once rehired.

17. In the weeks leading up to Plaintiff's termination, Defendant hired Gordon Cecil ("Cecil"), who was seventy-one years old, as a staff attorney. Upon starting work, Cecil remarked that he was "rusty" and in no position to do the work Plaintiff did. Cecil was only able to complete one residential exam in the period of one week, whereas other staff attorneys were required to complete twelve to twenty exams per day. It was glaringly obvious Cecil was not capable of doing Plaintiff's job. It is apparent Cecil was hired due to his older age, as a preemptive strike in the event Plaintiff attempted to allege age discrimination after he was terminated.

18. At the time Plaintiff was terminated, Defendant gave no reason for his termination. Defendant came up with invented reasons once it realized Plaintiff

was not just going to go away. As a result, in a letter dated October 26, 2012, Defendant stated "we've eliminated the General Counsel position" and that Plaintiff did not share Defendant's philosophy of good customer service, as reasons for Plaintiff's termination. While eliminating the General Counsel position would have been a permissible reason for termination, Defendant only came up with it after the fact and getting rid of the General Counsel title did not eliminate any of the job functions. Additionally, Plaintiff was never reprimanded in any way regarding his service to customers.

## Plaintiff's First Cause of Action
### ADEA - Age Discrimination (Discharge)

19. Plaintiff incorporates the above allegations herein;

20. Defendant discharged Plaintiff although Plaintiff was qualified and performing his job satisfactorily;

21. Plaintiff was forty years of age or older at the time he was discharged;

22. Plaintiff's job duties and responsibilities were assumed by an employee significantly younger than Plaintiff.

23. Defendant's discharge of Plaintiff was motivated by his age, in violation of the ADEA;

24. As a direct result of Defendant's actions, Plaintiff has suffered, and continues to suffer, lost wages (including back, present and front pay, along with the value of benefits associated with such wages), and emotional distress/dignitary

harm including embarrassment, anxiety, frustration and similar unpleasant emotions; and

25. Defendant's conduct was willful and conducted with malice and reckless indifference to Plaintiff's federally protected rights, and therefore punitive damages are appropriate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Dale L. Astle, requests that he be granted judgment in his favor and against Defendant on his claim and that this Court grant the Plaintiff all available compensatory damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**SUBMITTED THIS 31st DAY OF JANUARY, 2014.**

    Respectfully,

    s/Rand C. Eddy_____
    Rand C. Eddy, OBA #11822
    Riley W. Mulinix, OBA #30654
    MULINIX OGDEN HALL & LUDLAM
    210 Park Avenue, Suite 3030
    Oklahoma City, Oklahoma 73102
    Telephone: (405) 232-3800
    Facsimile:  (405) 232-8999
    rand@lawokc.com
    riley@lawokc.com

    ***ATTORNEYS FOR PLAINTIFF***